Filed 5/31/16  P. v. Urias CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C079478 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF151111) |
| v. | |
| DAVID URIAS, | |
| Defendant and Appellant. | |

A jury found defendant David Urias guilty of the unlawful driving or taking of a vehicle without the consent of the owner, and the trial court sentenced him to seven years in jail.  On appeal, defendant contends as follows:  (1) the prosecutor committed misconduct by eliciting police officer testimony regarding defendant's homelessness; (2) the court erred in admitting evidence of his homelessness; (3) he was deprived of effective assistance of counsel when his attorney failed to request a sidebar or court admonitions regarding his homelessness; (4) the prosecutor committed misconduct during closing arguments by claiming defense counsel conceded guilt; and (5) the court

1

abused its discretion in admitting police officer lay opinion regarding defendant's gloved hand movements. Moreover, defendant contends that these acts prejudiced the jury and violated his due process right to a fair trial, requiring reversal of his conviction.

We disagree with each of his contentions and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On December 20, 2013, Woodland Police Officer Juan Barrera was on patrol and pulled into a Costco parking lot. As Officer Barrera made the turn into the lot, he noticed a red Honda Civic about to leave the parking lot and turn right onto County Road 102. As Officer Barrera passed the Civic he "noticed the driver lift up his hand and try to conceal his face, and at that time, [he] noticed [the driver] was wearing a glove." Officer Barrera also saw a female passenger in the Civic. He noted the Civic's license plate number, ran it, and discovered that the plate was registered to Surjit Singh, whom Officer Barrera had previously arrested and knew was still in custody. The officer concluded either the car or plates were stolen. Officer Barrera also knew that Singh drove a Honda Accord that was a "very faded burgundy color."

Due to heavy traffic and a concrete median barrier, Officer Barrera could not initiate an immediate stop, but he located defendant driving the Civic about an hour later. He approached the Civic from the opposite direction, and when he passed it, defendant attempted to conceal his face with his gloved hand. Officer Barrera conducted a traffic stop and discovered, after running the vehicle identification number, that the owner of the Civic had reported his vehicle stolen six days earlier. Upon inspecting the vehicle, Officer Barrera noticed the ignition was damaged and a small flathead screwdriver was on the driver's side floor.

The owner had previously purchased the Civic with one set of keys. Prior to its being stolen, the Civic's steering column was intact and the owner had never used a screwdriver to start the car. The owner did not know defendant and had not given defendant permission to drive his car.

2

Defendant contends he did not receive a fair trial because the jury was prejudiced against him due to prosecutorial misconduct, ineffective assistance of counsel, and the admission of improper lay opinion.

## I

### *Prosecutorial Misconduct*

Defendant contends the prosecutor committed misconduct on two occasions during the trial: (1) when the prosecutor elicited testimony that defendant was homeless; and (2) when the prosecutor stated during closing argument that defense counsel had conceded defendant's guilt.

The standards used to evaluate prosecutorial misconduct are well established. "A prosecutor's misconduct violates the Fourteenth Amendment to the United States Constitution when it 'infects the trial with such unfairness as to make the conviction a denial of due process.' [Citations.] In other words, the misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' [Citation.] A prosecutor's misconduct that does not render a trial fundamentally unfair nevertheless violates California law if it involves 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' " (*People v. Cole* (2004) 33 Cal.4th 1158, 1202.)

We review each of defendant's misconduct allegations in turn, finding merit in neither.

## A

### *The Prosecutor Did Not Commit Misconduct In Eliciting That Defendant Was Homeless*

Defendant contends the prosecutor committed misconduct when he elicited from Officer Barrera that defendant was homeless.

The evidence that defendant was homeless arose during the prosecutor's redirect questioning of Officer Barrera in the following colloquy:

3

"[Prosecutor]: Officer Barrera, you indicated that when you were trying to do a traffic stop, the vehicle was pulling into a parking stall?

"[Officer Barrera]: Correct.

"[Prosecutor]: Were the -- did you, as part of your investigation, obtain the addresses of both individuals, the Defendant and his female passenger?

"[Officer Barrera]: Yes.

"[Prosecutor]: Were either of them associated with that address, that location?

"[Officer Barrera]: No.

"[Prosecutor]: And in fact, did the Defendant even give you an address or location?

"[Defense Counsel]: Objection, your Honor. Calls for hearsay, and relevance.

"THE COURT: Overruled.

"[¶] . . . [¶]

"[Prosecutor]: So where did he say he lived?

"[Defense counsel]: Objection, your Honor. Calls for -- well, relevance.

"THE COURT: Overruled.

"[Officer Barrera]: I don't think he did. I just think we got an address from -- his old address on his license.

"[Prosecutor]: Now, is that something you put in your report as well, his last known address?

"[Officer Barrera]: We usually try to see if they'll give us an address, or we go off of what's on their driver's license at the time.

"[Prosecutor]: What did you put for the Defendant?

"[Officer Barrera]: Can I look at the report?

"[Prosecutor]: If that would refresh your recollection?

"[Officer Barrera]: Yes.

"THE COURT: You may.

4

"[Officer Barrera]: (Witness reviews documents.) Put homeless."

Defendant contends that evidence of his homelessness was prejudicially inadmissible because it "play[ed] on the jury's fears," "invited the jury to decide the case based upon [his] character rather than on the facts," and "infused the proceedings with the notion that the city would be a safer[,] cleaner place if [he] was shipped off to prison." Defendant argues that evidence of homelessness presents the "same danger as evidence of poverty, although the stigma of homelessness is much more prejudicial." We are not persuaded.

" 'A prosecutor is under a duty to guard against inadmissible statements from his witnesses and guilty of misconduct when he violates that duty. . . .' [Citation.] [¶] When a prosecutor intentionally asks questions, the answers of which he knows are inadmissible, the prosecutor is guilty of bad faith attempts to improperly persuade the court or jury." (*People v. Parsons* (1984) 156 Cal.App.3d 1165, 1170.)

Here, the prosecutor did not elicit evidence he knew was inadmissible because the court permitted his line of questions and there was nothing in the record of a pretrial ruling barring its admission. Even assuming the information was irrelevant, the single reference to defendant's homelessness was not prejudicial. As soon as the prosecutor elicited this information from Officer Barrera, he moved on to another topic by asking, "Now, the other individual in the car, what was her name?" The prosecutor did not reference defendant's homelessness again. He did not use it in closing argument to persuade the jury to consider that defendant's homelessness created a motive or propensity to steal.

B

*The Prosecutor Did Not Commit Misconduct During Closing Argument*

Defendant contends the prosecutor committed misconduct by arguing in rebuttal that defense counsel had conceded guilt, violating his due process rights and improperly shifting the burden of proof. He contends the prosecutor "effectively precluded the jury

5

from considering [his] knowledge which went to the element of his intent to deprive the owner of possession." He further contends that the trial court's admonition was inadequate. We are not persuaded.

"To establish a [person]'s guilt of violating Vehicle Code section 10851, subdivision (a), the prosecution is required to prove that the defendant drove or took a vehicle belonging to another person, without the owner's consent, and that the defendant had the specific intent to permanently or temporarily deprive the owner of title or possession." (*People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1574.)

During closing argument, in an effort to persuade the jury there was a reasonable doubt as to whether defendant intended to deprive the owner of possession of the car, defense counsel contrasted what facts were "known" from those that were "unknown" by saying as follows:

"Now, I went through and I tried to list a few of the things we do know in this case. We know the . . . Civic was stolen or [*sic*] about December 14th, 2013, but nobody told you that [defendant] or anybody else was seen driving that car on December 14th, 15th, 16th, 17th, 18th, or 19th.

"It wasn't until December 20th at about noon that [defendant] [wa]s seen driving the [Civic], and we know that the [Honda Accord] was abandoned . . . about a week prior to December 20th.

"[¶ . . . ¶]

"The only thing we know is that [defendant] was driving the . . . Civic at about 1 o'clock on December 20th, 201[3], and it was being driven with a screwdriver. Anything else more than that is pure speculation, and subject to thousands of reasonable doubts.

"Now, the People told you in their opening that there would be evidence that [defendant] stole the [Civic]. I think it's very clear there was absolutely no evidence who stole the [Civic].

6

"Again, the only evidence we have is that [defendant] was driving the [Civic] about a week later. We had information from [a convicted car thief] . . . that oftentimes people who steal cars give them away to other people.

"Now, whether or not you or I would take a car from somebody that was being driven with a screwdriver, probably not. Pretty certain that none of us would be [*sic*] do that. But that doesn't mean that somebody is guilty of a crime if they act differently than how we would act.

"This is not a guessing game. It's far too serious for that. So what I'm asking you to do, on behalf of [defendant], is to look carefully at the evidence."

On rebuttal closing argument, the prosecutor argued, in relevant part as follows:

"Ladies and gentlemen, [defense counsel] just conceded Count 1 of the Information, the stolen vehicle. [Defense counsel] conceded that [defendant] was not authorized to drive [the Civic].

"You heard [defense counsel] say yes, [defendant] was driving -- [but he] did not mention anything about the fact that [the owner of the Civic] did not give [defendant] permission, because [defense counsel] can't argue that. There's nothing to refute there. [Defense counsel] chose not to respond to that, because there is no doubt.

"When you look at reasonable doubt, what possible scenarios can you fit in there to say that [defendant's] driving a vehicle that's not his, he doesn't have permission to drive it, and he never returned it? If the Defense concedes the argument, the evidence supports the argument[;] your job is easy for Count 1. It's guilty."

Near the end of the prosecution's rebuttal argument, the following exchange occurred:

"[Prosecutor]: And the evidence shows beyond all doubt for Count 1, as agreed by the Defense, that he was driving that vehicle without --

"[Defense Counsel]: Your Honor, I'm going to object as to [*sic*] misstates my argument.

7

"THE COURT: This is not evidence. Argument is not evidence. You heard the evidence, you decide what the facts are, you apply the law as I instruct you to the facts. [¶] Continue."

When the claim of prosecutorial misconduct focuses on comments before the jury, the " 'question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.' " (*People v. Harrison* (2005) 35 Cal.4th 208, 244.) "A prosecutor is given wide latitude during closing argument. The argument may be vigorous as long as it is a fair comment on the evidence, which can include reasonable inferences or deductions to be drawn therefrom." (*Ibid.*) However, "[i]t is improper for a prosecutor to argue to the jury as an analysis of the defense argument or strategy that defense counsel believes his client is guilty." (*People v. Bell* (1989) 49 Cal.3d 502, 537.) A conviction will not be reversed for prosecutorial misconduct "unless it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct." (*People v. Crew* (2003) 31 Cal.4th 822, 839.)

Here, defense counsel objected on the ground that the prosecutor "misstate[d his] *argument*," (italics added) not that he misstated the law or misstated the facts. But the prosecutor was merely characterizing defense counsel's admission that defendant drove the Civic as a concession of guilt on the unlawful taking or driving count. The prosecutor was arguing that defendant admitted driving the car, which, in fact, he did. The prosecutor cited both what defense counsel said and what counsel failed to argue as the basis for his assertion that defense counsel had conceded his client's guilt. Defense counsel objected to the prosecutor's characterization of his argument and the court offered a curative admonition by reminding the jury that counsel's argument is not evidence. We do not find the prosecutor's assertion that defense counsel conceded guilt on the unlawful taking count to be misconduct, and in any event, we find the trial court's admonition was sufficient to cure any potential prejudice against defendant.

## II

### *The Trial Court Did Not Abuse Its Discretion*

Defendant contends the trial court erred in admitting: (1) evidence of his homelessness; and (2) Officer Barrera's opinion testimony regarding the meaning of defendant's hand movements and the wearing of gloves. We disagree.

### A

### *Evidence Of Defendant's Homelessness*

Defendant contends the trial court erred in admitting evidence of his homelessness because it was inadmissible character evidence, irrelevant, and unduly prejudicial. We disagree.

On appeal, a trial court's decision to admit or not admit evidence is only reviewed for abuse of discretion. (*People v. Williams* (1997) 16 Cal.4th 153, 196.) "In determining the admissibility of evidence, the trial court has broad discretion." (*Ibid.*) "[T]he erroneous admission or exclusion of evidence does not require reversal except where the error or errors caused a miscarriage of justice." (*People v. Richardson* (2008) 43 Cal.4th 959, 1001.) A reviewing court should find a miscarriage of justice "only when the court, 'after examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

The admission of the singular reference to defendant's homelessness did not lead to a "miscarriage of justice." The prosecutor never relied on this evidence in argument, it was not proof of any matter at trial, and there is no evidence the jury relied on this evidence in its determination of defendant's guilt.

B

*Officer Barrera's Lay Opinion*

Defendant contends he did not receive a fair trial because the trial court erroneously admitted Officer Barrera's lay opinions that defendant's gloved hand movements were an attempt to conceal his appearance and most car thieves wear gloves. We disagree.

Defendant's contention is based on the following exchanges during the direct examination of Officer Barrera:

"[Prosecutor]:  What did you observe at that time?

"[Officer Barrera]:  As I was driving into the parking lot, I saw [the Civic] getting ready to turn onto County Road 102.  When I passed the vehicle, I noticed the driver lift up his hand and try to conceal his face, and at that time, I noticed he was wearing a glove.

"[Prosecutor]:  And you were able to see the face -- before the driver of the vehicle put his hand up, were you able to see his face?

"[Officer Barrera]:  I wasn't able to make out who he was or anything.

"[Prosecutor]:  Okay.  Now, you indicated -- you just gestured that he put up his hand, just sort of blocking the side of his face.  Why did it appear to you that he was trying to hide his face?

"[Defense counsel]:  Objection, your Honor.  Calls for speculation.

"THE COURT:  Overruled.

"[Officer Barrera]:  It just -- it's out of the ordinary.  When you see a police officer and you cover your face, to us, it's trying to hide something, or you just did something wrong.

"[Prosecutor]:  Did it appear -- could it have been that -- well, was there a glare?  Was the sun pointed in that direction?

"[Officer Barrera]:  [He] was the only [person who] was covering [his] face.  Nobody else was doing it.

10

"[Prosecutor]: And so there was -- you know, was the driver, did he at any point hold his hand up sort of above this eyebrow, as to shield the sun while waiting at that light?

"[Officer Barrera]: No. It was directly across the whole left side of his face.

"[Prosecutor]: Was that unusual to you?

"[Officer Barrera]: Yes it is.

"[Prosecutor]: And why was that?

"[Officer Barrera]: Like I said, most people don't do that when they see a police officer. It's either trying to hide something or they just did something wrong, so you don't recognize their face.

"[Defense counsel]: Your Honor, I object again as speculation, and move to strike.

"THE COURT: You're going to hear an instruction on a lay opinion. This is a lay opinion. He can give his reasons for his opinion. You don't have to accept the opinion as true and correct. You can consider his opinion and what he bases his opinion on, and you can decide how much weight to give his opinion.

"[¶ . . . ¶]

"[Prosecutor]: Now you indicated that the driver was wearing gloves, black gloves.

"[Officer Barrera]: Correct.

"[Prosecutor]: Was -- was that of any significance to you?

"[Officer Barrera]: Yes it is.

"[Prosecutor]: Why?

"[Defense counsel]: Objection, your Honor. Calls for speculation.

"THE COURT: Overruled at this time.

"[Officer Barrera]: Most of the times when they steal cars they'll wear gloves, because they think they're going to leave fingerprints on the vehicle, and when we find it,

11

we'll dust the car for fingerprints and send them to off for testing. So if you wear gloves, you won't leave fingerprints on the vehicle."

Prior to its deliberating, the jury was given the CALCRIM No. 333 instruction concerning lay opinion testimony. " 'A lay witness may testify to an opinion if it is rationally based on the witness's perception and if it is helpful to a clear understanding of his testimony.' " (*People v. Virgil* (2011) 51 Cal.4th 1210, 1254.) "The admission of a layperson's opinion testimony lies in the discretion of the trial court and will not be disturbed ' "unless a clear abuse of discretion appears." ' " (*People v. Brown* (2001) 96 Cal.App.4th Supp. 1, 33.) Evidence Code section 800[1] "merely requires that witnesses express themselves at the lowest possible level of abstraction. [Citation.] Whenever feasible, 'concluding' should be left to the jury; however, when the details observed, even though recalled, are 'too complex or too subtle' for concrete description by the witness, he may state his general impression." (*People v. Hurlic* (1971) 14 Cal.App.3d 122, 127.)

Here, Officer Barrera's lay opinion fell squarely within Evidence Code section 800. Officer Barrera's description of defendant's hand movement was based on his visual perception. His opinion that defendant was attempting to conceal his face was an inference rationally related to his visual observation and helpful to the jury, so it would understand why Barrera considered defendant's conduct unusual and furtive. The same goes for his comment about gloves and car thieves. In his experience, car thieves usually wear gloves to prevent the collection of fingerprints. This information was

---

[1]    Evidence Code section 800 provides:

"If a witness is not testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is permitted by law, including but not limited to an opinion that is:

"(a)    Rationally based on the perception of the witness; and

"(b)    Helpful to a clear understanding of his testimony."

helpful to the jury to understand why the glove was a factor in Officer Barrera's suspicion that defendant might be engaged in wrongdoing. Therefore, we find that the trial court did not abuse its discretion in admitting Officer Barrera's lay opinion testimony.

## III

### *Ineffective Assistance Of Counsel*

Defendant contends his counsel was ineffective in failing to request a sidebar "to inform the court that the prosecutor was attempting to elicit the fact that the defendant was homeless." We disagree. Because we have found that defendant's other claims on this subject are without merit, his ineffective assistance of counsel claim is also without merit.

## DISPOSITION

The judgment is affirmed.

/s/
Robie, Acting P. J.

We concur:

/s/
Mauro, J.

/s/
Duarte, J.

13